**UNITED STATES of America, Plaintiff,**

and

**New England Adolescent Research Institute, Inc., Plaintiff–Intervenor**

v.

**MASSACHUSETTS INDUSTRIAL FINANCE AGENCY, Defendant.**

Civ. A. No. 94–30017 MAP.

United States District Court, D. Massachusetts.

July 7, 1995.

Karen L. Goodwin, U.S. Atty's. Office, Springfield, MA, Patrick J. Markey, James P. Turner, Acting Asst. Atty. Gen., Christine R. Ladd, Brian F. Heffernan, Housing and Civ. Enforcement Section, Civil Rights Div., U.S. Dept. of Justice, Paul F. Hancock, Chief, U.S. Dept. of Justice, Housing and Civ. Enforcement Section, Washington, DC, for U.S.

Michael Sheetz, Gadsby & Hannah, Boston, MA, Shepard M. Remis, Barbara Healy Smith, U. Gwyn Williams, Goodwin, Proctor & Hoar, Boston, MA, for Massachusetts Indus. Finance Agency.

David Engle, Robert D. Fleischner, Center for Public Representation, Northampton, MA, for New England Adolescent Research Institute, Inc.

*ORDER OF COURT ON PLAINTIFF UNITED STATES' MOTION TO BAR MIFA FROM PRESENTING EVIDENCE RELATING TO UNANSWERED RULE 30(b)(6) QUESTIONS OR, IN THE ALTERNATIVE, TO COMPEL MIFA TO DESIGNATE A KNOWLEDGEABLE RULE 30(b)(6) WITNESS (Docket No. 48), AND UNITED STATES' MOTION TO COMPEL ANSWERS TO INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS (Docket No. 50)*

NEIMAN, United States Magistrate Judge.

Counsel for Plaintiff United States of America, Plaintiff–Intervenor New England Adolescent Research Institute, Inc. ("NEARI"), and Defendant Massachusetts Industrial Finance Agency ("MIFA") appeared before the Court on June 30, 1995, with regard to the above-captioned motions, both of which concern aspects of discovery.

In September of 1989, NEARI applied to MIFA for conduit bond financing with the hope of obtaining sufficient capital to develop a residential school for emotionally-disturbed boys. Once MIFA's Board of Directors granted NEARI preliminary approval, NEARI began to search for an investor. However, NEARI never found an investor and MIFA never submitted NEARI's application to its Board of Directors for final approval. The United States and NEARI claim that MIFA discriminated against NEARI because MIFA did not grant final approval for NEARI's project.

*I. UNITED STATES' MOTION TO BAR MIFA FROM PRESENTING EVIDENCE RELATING TO UNANSWERED RULE 30(b)(6) QUESTIONS, OR, IN THE ALTERNATIVE, TO COMPEL MIFA TO DESIGNATE A KNOWLEDGEABLE RULE 30(b)(6) WITNESS (Docket No. 48)*

On February 7, 1995, in accord with Rule 30(b)(6) of the Federal Rules of Civil Procedure, the United States served notice that it intended to take the deposition of a representative of MIFA regarding eight topics. The deposition took place on March 15, 1995. David Slattery, MIFA's general counsel, appeared at the deposition as MIFA's representative, but was not able to provide complete information with respect to five of the eight topics. As a consequence, the United States claims that MIFA failed to make a complete designation and to produce a knowledgeable witness as required by Rule 30(b)(6). Specifically, the United States argues that MIFA failed to make a good faith effort to provide a witness who can provide complete and knowledgeable answers binding on the agency. See *Marker v. Union Fidelity Life Insurance Co.*, 125 F.R.D. 121, 126 (M.D.N.C.1989); *Mitsui & Co. v. Puerto Rico Water Resources Authority*, 93 F.R.D. 62 (D.P.R.1981); *Protective Nat'l Ins. Co. v. Commonwealth Ins. Co.*, 137 F.R.D. 267 (D.Neb.1989); and *Federal Deposit Insurance Corp. v. Butcher*, 116 F.R.D. 196, 201 (E.D.Tenn.1986), *aff'd*, 116 F.R.D. 203 (E.D.Tenn.1987).

In opposition, MIFA asserts that the United States is already in possession of all facts known to MIFA relating to its actions with respect to NEARI and its application for conduit bond financing. More importantly, MIFA asserts that the pending action is unique because there is no one currently at MIFA who has knowledge of the disputed

events. Rule 30(b)(6), MIFA argues, requires only that the organization designate a person to testify "as to matters known or reasonably available to the organization," and that it must simply make a "good faith effort" to designate a person with knowledge of the deposition topics. *Marker, supra,* 125 F.R.D. at 126. MIFA argues that the purpose of Rule 30(b)(6) will not be advanced by requiring testimony from a current MIFA representative concerning actions taken five years ago by persons no longer there. MIFA further asserts that the United States was aware, even before it noticed the Rule 30(b)(6) deposition, that no current MIFA employee had any personal knowledge of the events relating to this litigation.

The United States has already deposed the five individuals who were with MIFA at the time of the disputed events. However, the parties disagree on the extent of contradiction in the deposition testimony of these five individuals. The United States asserts that the deposition testimony was so contradictory that the Court should now require MIFA to provide a consistent interpretation of the facts at issue. MIFA disagrees and claims that the testimony was not particularly contradictory, considering it was based on five personal recollections. MIFA asserts that the trial will sort out the facts derived from the direct testimony of the five individuals and, further, that MIFA's position is constrained by that testimony and the testimony of Mr. Slattery, MIFA's Rule 30(b)(6) representative. MIFA further indicates that the best it can do is provide Mr. Slattery for the deposition; therefore, the alternative remedy that the United States is seeking, i.e., to designate a new, knowledgeable Rule 30(b)(6) witness, would be futile.

■ It is evident to the Court that MIFA could have done a better job in preparing Mr. Slattery for the deposition. Such preparation, despite MIFA's arguments to the contrary, is required for a Rule 30(b)(6) deposition. See *Marker, supra,* 125 F.R.D. at 126. See also *Protective National Ins. Co., supra.* However, the Court disagrees that Mr. Slattery's inability to fully testify on all the topics set forth in the notice was tantamount to a complete failure of the agency to appear.

Compare *Resolution Trust Corp. v. Southern Union Co., Inc.,* 985 F.2d 196, 197 (5th Cir. 1993). The Court does not believe, given the facts before it, that MIFA acted wilfully or in bad faith to obstruct discovery. See *In re Anthracite Coal Antitrust Litigation,* 82 F.R.D. 364, 368 (M.D.Pa.1979). As a result, the most the Court will do, as indicated to the parties at hearing, is to require MIFA to produce more documents and clarify its position in response to a number of interrogatories. See discussion below. However, the Court will not order MIFA to produce another Rule 30(b)(6) deposition witness. Nor will the Court bar MIFA from presenting its position through witnesses who have already been deposed by the United States. Accordingly, the motion of the United States is DENIED.

## II. UNITED STATES' MOTION TO COMPEL ANSWERS TO INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS (Docket No. 50)

The United States' motion has three distinct parts: first, to compel satisfactory answers from MIFA to a number of questions set forth in its First Set of Interrogatories; second, to compel satisfactory answers to a number of questions in its Second Set of Interrogatories; and, third, to compel the production of certain documents. The Court will address these parts *seriatim.*

### A. First Set of Interrogatories.

The United States asserts that MIFA failed to narrow or clarify issues through its interrogatory answers, as required by Rule 33 of the Federal Rules of Civil Procedure. See *Hickman v. Taylor,* 329 U.S. 495, 500, 67 S.Ct. 385, 388, 91 L.Ed. 451 (1947); and *U.S. v. Procter & Gamble Co.,* 356 U.S. 677, 682–83, 78 S.Ct. 983, 986–87, 2 L.Ed.2d 1077 (1958). The United States asserts that MIFA's reliance on lack of personal knowledge of the facts is not a defense to its failure to fully answer the interrogatories and that any information collected on the interrogatory subject must be produced, *Miller v. Doctor's General Hospital,* 76 F.R.D. 136, 140 (W.D.Okla.1977), even if the information is

solely held by MIFA's attorney. *Hickman,* 329 U.S. at 504, 67 S.Ct. at 390; and *Naismith v. Professional Golfers Ass'n,* 85 F.R.D. 552, 564–65 (N.D.Ga.1979). The United States argues that information given to MIFA, which MIFA intends to rely on at trial, must be revealed in answers to interrogatories. *Wright, Miller & Marcus,* 8A Federal Practice and Procedure: Civil 2d §§ 2171, 2177. In opposition, MIFA asserts that, since none of its current employees has personal knowledge of the events and since answers to the interrogatories can be derived from MIFA's business records, the discovery burden is equal between the parties.

■ After review, the Court DENIES the United States' motion with respect to Interrogatory No. 1, but ALLOWS the motion with regard to Interrogatory Nos. 3 and 5. MIFA is required to supplement its answers to Interrogatory Nos. 3 and 5 by July 14, 1995. With regard to Interrogatory No. 3, MIFA is required to specify and identify its claim, set forth in its position statement filed with the Massachusetts Commission Against Discrimination, that investors were not interested in NEARI's bond offering. With respect to Interrogatory No. 5, MIFA must supplement its answer and be more specific than simply referring the United States to other documents. Further, the information the United States is seeking is not related to an attorney's work product; information disclosed to the attorneys or learned by its counsel in interviews with potential third-party witnesses needs to be provided with specificity.

■ As indicated at the hearing, the Court ALLOWS the motion with respect to Interrogatory Nos. 10 through 19. While providing summary answers to each one of those interrogatories, MIFA consistently indicated that it was unable to fully answer the interrogatories since discovery was ongoing. MIFA is therefore required to supplement those answers by no later than July 7, 1995 and/or indicate that the particular affirmative defense which is the subject matter of the particular interrogatory will not be pursued.

### B. Second Set of Interrogatories

Given the Court's ruling with regard to the production of documents, see below, the Court DENIES the United States' motion with regard to Interrogatories Nos. 1 through 5 in its Second Set of Interrogatories.

### C. Request for Production of Documents

The United States is seeking the production of a variety of documents set forth in its Request Nos. 1, 7, 8, 10, 14, 15 and 16. The documents originally sought by the United States cover the calendar years 1988 through the present. In its motion, however, the United States voluntarily limited the time period to calendar years 1988 through 1991. Although MIFA produced some documents, it uniformly objected to the requests on grounds that they were impermissibly broad and unduly burdensome. MIFA further asserted that the requested documents were neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

■ With regard to MIFA's objections that the requests are burdensome, the United States indicated its willingness to send personnel to MIFA to review its files, thus reducing any burden on MIFA. Further, the Court finds that the documentary evidence sought is relevant. Since this case alleges disparity of treatment by MIFA on the basis of handicap, evidence of how other organizations were treated by MIFA might well be relevant to a determination of whether it discriminated against NEARI. See *Harper v. Union Savings Ass'n,* 429 F.Supp. 1254, 1261 (N.D.Ohio 1977) (evidence of actions taken with respect to other mortgagees, black and white, considered in suit under the Fair Housing Act alleging racial discrimination by bank and foreclosure proceedings); *Johnson v. Jerry Pals Real Estate,* 485 F.2d 528, 529–530 (7th Cir.1973) (references made to the defendant's past practices of not selling homes to blacks in white residential neighborhoods and to statement by the defendant's agent to a white home buyer that black home buyers were not shown all listings); and *Bishop v. Pecsok,* 431 F.Supp. 34, 36 (N.D.Ohio 1976) (evidence that landlord had told another black applicant that he did

not rent to blacks, was relied on to support conclusion that the rejection of the plaintiff's application was based on race).

As a general matter, relevancy must be broadly construed at the discovery stage such that information is discoverable if there is any possibility it might be relevant to the subject matter of the action. *Gagne v. Reddy,* 104 F.R.D. 454, 456 (D.Mass.1984). "[R]elevant information includes any matter that is or may become an issue in the litigation." *Multi-Core, Inc. v. Southern Water Treatment Co.,* 139 F.R.D. 262, 264 n. 2 (D.Mass.1991). See also *Chubb Integrated Systems Limited v. National Bank of Washington,* 103 F.R.D. 52, 59 (D.D.C.1984) ("The concept of relevancy is broadly construed at the discovery stage of an action, and discovery rules are to be accorded liberal treatment.")

The United States, therefore, is entitled to some of the information it has requested. However, the time period for which the information is sought is excessive. Accordingly, the Court will ALLOW the motion of the United States with respect to the production of documents, but will limit the documents to those produced during calendar years 1988 through 1990. Further, to accomplish the task, MIFA is to make its files available to the United States for its search for relevant documents. MIFA shall make such arrangements and shall have the right to accompany representatives of the United States in the review of MIFA's relevant files. The parties shall maintain, for their own use, a joint schedule of documents retrieved. Access to the documents shall be completed by July 14, 1995.

In addition, given the potential confidentiality of the documents, the information produced in accord with this Order will be used solely for purposes of this litigation; will be returned intact to MIFA at the conclusion of the lawsuit; and may only be revealed to counsel for the parties, the parties themselves, retained experts, necessary clerical personnel and the Court. Access to the documents shall be completed by July 14, 1995.

## III. *FURTHER SCHEDULING ORDER*

The deadline for the filing of motions for summary judgment, now set for July 7, 1995, is hereby extended to July 21, 1995, with responses due by August 3, 1995. Otherwise, the existing Court schedule shall remain undisturbed.

It is so ordered.